1  CHRISTOPHER M. AHEARN
   Bar No. 239089
2  OGLETREE DEAKINS
   One Market Plaza, Suite 1300
3  San Francisco, CA 94105
   Telephone: (415) 536-3411
4  Facsimile: (415) 442-4870

5  ANDREW C. SMITH
   (Admitted pro hac vice)
6  VORYS, SATER, SEYMOUR AND PEASE LLP
   52 East Gay Street
7  Columbus, OH 43215
   Telephone: (614) 464-6400
8  Facsimile: (614) 464-6350

9  LIANA R. HOLLINGSWORTH
   (Admitted pro hac vice)
10 VORYS, SATER, SEYMOUR AND PEASE LLP
   200 Public Square
11 Suite 1400
   Cleveland, OH 44114
12 Telephone: (216) 479-6100
   Facsimile: (216) 479-6060
13 Attorneys for Defendants

14 VICTORIA'S SECRET STORES, LLC,
   RETAIL STORE OPERATIONS, INC.,
15 SHAWN THOMPSON, and AMY GERMAIN

16

17

18

           **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 18  LETICIA SAUCEDO, | Case No. 5:13-cv-04860-EJD |
| 19           Plaintiff, | |
| 20      v. | |
| 21  VICTORIA'S SECRET STORES BRAND MANAGEMENT, INC., LIMITED BRANDS STORE OPERATIONS, INC. dba | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT** |
| 22  VICTORIA'S SECRET STORES, SHAWN THOMPSON and AMY GERMAIN, | Date: June 18, 2015 |
| 23           Defendants. | Time: 9:00 a.m. |
| 24 | District Judge Edward J. Davila |

25

26

27

28

PLEASE TAKE NOTICE that on June 18, 2015, at 9:00 a.m., or as soon thereafter as the matter may be heard in the Courtroom of the Honorable Edward J. Davila, located at 280 South 1st Street, San Jose, California 95113, Defendants Victoria's Secret Stores, LLC and Retail Store Operations, Inc. (collectively, "VSS" or the "Company")[1] Amy Germain ("Germain"), and Shawn Thompson ("Thompson") move for an order granting summary judgment in their favor.

This motion is based upon this Notice of Motion; Memorandum of Points and Authorities; Separate Statement; the depositions of Plaintiff Leticia Saucedo ("Plaintiff" or "Saucedo"), Thompson, Germain, Herminigildo Valle, MD, the declarations of Liana R. Hollingsworth and Kathleen Fogarty ("Fogarty") and the exhibits attached thereto; the other records, pleadings, and papers filed in this action; and upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this motion.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants hereby respectfully moves this Court to enter summary judgment in its favor and against Plaintiff Leticia Saucedo on the grounds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

---

[1] VSS was incorrectly identified as "Victoria's Secret Stores Brand Management, Inc." and "Limited Brands Store Operations, Inc. dba Victoria's Secret Stores."

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.      STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

II.     INTRODUCTION ................................................................................................... 1

III.    STATEMENT OF FACTS ...................................................................................... 2

        A.      The Company and Individual Defendants ................................................... 2

        B.      Overview of Plaintiff's Employment History with VSS ............................ 3

        C.      Relevant VSS Policies and Procedures ...................................................... 3

        D.      VSS Receives A Complaint That Plaintiff Is Not Working Her
                Scheduled Shifts And, While Investigating the Complaint, Discovers that
                Plaintiff Edited Her Own Time In Violation of Company Policy .............. 5

        E.      On May 1, 2012, Plaintiff Admits to Editing Her Own Time And Is
                Suspended .................................................................................................... 6

        F.      During the May 1, 2012 Meeting, Plaintiff Alleges That She Discussed
                Her Anxiety and How She Had Previously Considered Taking A "Stress
                Leave\ ......................................................................................................... 7

        G.      After She Is Suspended, Plaintiff Allegedly Has Her Doctor Fax a Note
                to HR ........................................................................................................... 8

        H.      Plaintiff's Employment Is Terminated on May 4, 2012, Due to Her
                Serious Policy Violation ............................................................................. 9

        I.      Plaintiff's Allegations of Emotional Distress ............................................ 9

IV.     LAW AND ARGUMENT ...................................................................................... 11

        A.      Plaintiff's Disability Claims Fail .............................................................. 11

                1.      Plaintiff Cannot Establish a Failure to Accommodate Claim ........ 11

                2.      Plaintiff's Failure to Engage in the Interactive Process Claim
                        Also Fails ...................................................................................... 14

                3.      Plaintiff Cannot Establish That She Was Wrongfully Terminated
                        on the Basis of Her Disability ....................................................... 14

1

B.   Plaintiff's FMLA Interference Claim Fails..................................................15

2

1.   Plaintiff Was Not Entitled To Leave Under the FMLA ............................16

3

2.   Plaintiff Did Not Provide Notice of Her Intent to Take FMLA
Leave.......................................................................................................17

4

5

C.   Plaintiff's Emotional Distress Claims Also Fail......................................................17

6

1.   Plaintiff Cannot Establish An Intentional Infliction of Emotional
Distress Claim Against VSS ....................................................................18

7

8

2.   Plaintiff Cannot Establish A "Negligent Infliction of Emotional
Distress" Claim .......................................................................................20

9

V.   CONCLUSION..................................................................................................................21

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Arn v. News Media Group*, Case No. 02-2060, 2004 U.S. Dist. LEXIS 31324 (E.D. Cal. Apr. 29, 2004) ..................................................................................................... 13

*Ball v. Los Rios Cmty. College Dist.*, Case No. 2:04cv0970, 2007 U.S. Dist. LEXIS 43578 (E.D. Cal. June 14, 2007) ................................................................................ 11

*Billmeyer v. Plaza Bank of Commerce*, 42 Cal. App. 4th 1086 (Ct. App. 1995) ....................... 18

*Black v. Baxter Healthcare Corp.*, No. 96-55749, 1997 U.S. App. LEXIS 30422 (9th Cir. 1997) ............................................................................................................... 19

*Casagrande v. Allied Blending & Ingredients, Inc.*, No. CV-12-00498, 2013 U.S. Dist. LEXIS 4796 (C.D. Cal. Jan. 10, 2013) ............................................................... 19

*Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) .............................................................. 19

*Edwards v. Dialysis Clinic, Inc.*, 423 F. Supp.2d 789 (S.D. Ohio 2006) .................................... 17

*Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236 (9th Cir. Cal. 2014) ............................... 16

*Foster v. City of Oakland*, 649 F. Supp.2d 1008 (N.D. Cal. 2009) ............................................ 13

*Girard v. Ball*, 125 Cal. App. 3d 772 (1981) ............................................................................. 20

*Hajianpour v. Synova, Inc.*, Case No. 12-1765, 2012 U.S. Dist. LEXIS 161272 (C.D. Cal. Nov. 5, 2012) ............................................................................................... 14

*Holtzclaw v. Certainteed Corp.*, 795 F.Supp.2d 996 (E.D. Cal. 2011) ...................................... 12

*Hughes v. Pair*, 46 Cal. 4th 1035 (2009) ................................................................................... 20

*Jackson v. Simon Prop. Group, Inc.*, 795 F. Supp. 2d 949 (N.D. Cal. 2011) ............................ 15

*Janken v. Gm Hughes Electronics*, 46 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996) ..................... 19

*Jersey v. John Muir Med. Ctr.*, 97 Cal. App, 4th 814, 830 (2002) ............................................ 19

*Kelley v. Corr. Corp. of Am.*, 750 F. Supp.2d 1132, 1139 (E.D. Cal 2010) ............................... 12

*Kennedy v. Kings Mosquito Abatement Dist.*, Case No. 1:12cv1458, 2013 U.S. Dist. LEXIS 107652 (E.D. Cal. July 30, 2013) ...................................................... 11

*Klein v. Raytheon Co.*, Case No. 08-6461, 2009 U.S. Dist. LEXIS 106666 (C.D. Cal. Nov. 2, 2009) ............................................................................................... 13

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

*Krouse v. Ply Gem Pac. Windows Corp.*, 803 F. Supp. 2d 1220 (D. Or. 2011) ........................ 17

*Lawler v. Montblanc N. Am. LLC*, 704 F.3d 1235 (9th Cir. 2013) ............................................ 20

*Lopez v. Costco Wholesale Corp.*, Case No. 2009 U.S. Dist. LEXIS 93722 (E.D. Cal.
        Oct. 7, 2009) ................................................................................................................ 21

*McClelland v. Permanente Med. Group, Inc.*, 2013 U.S. Dist. LEXIS 40708 (E.D. Cal.
        Mar. 22, 2013) .............................................................................................................. 12

*Navarro v. Pfizer Corporation*, 261 F.3d 90 (1st Cir. 2011) ..................................................... 16

*Neumeyer v. Wawanesa Gen. Indus. Co.*, Case No. 14cv181, 2015 U.S. Dist. LEXIS
        59024 (S.D. Cal. Apr. 24, 2015) .................................................................................. 14

*Pleasant v. Autozone, Inc.*, No. CV-12-07293, 2013 U.S. Dist. LEXIS 86360 (C.D. Cal.
        June 19, 2013) ........................................................................................................ 18, 19

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (Cal. 1993) .......................................... 21

*Reno v. Baird*, 18 Cal.4th 640, 76 Cal. Rptr. 2d 499, 957 P.2d 1333 (1998) ........................... 11

*Scotch v. Art Institute of Ca.*, 173 Cal. App. 4th 986 (Cal. App. 4th Dist. 2009) ...................... 14

*Smith v. Int'l Brotherhood of Elec. Workers*, 109 Cal. App. 4th 1637 (Cal. App. 2d Dist.
        2003) ............................................................................................................................. 18

*Standard Wire & Cable Co. v. AmeriTrust Corp.*, 697 F.Supp.368 (C.D. Cal. 1988) .............. 20

*Tomada v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 76343 (N.D. Cal. June 3,
        2014) ............................................................................................................................. 15

*Williams v. Sun. Microsystems*, Case No. H029828, 2007 Cal. App. Unpub. LEXIS
        6424 (Cal. App. 6th Dist. Aug. 7, 2007) ...................................................................... 18

*Zapponi v. CSK Auto, Inc.*, Case No. 02-0536, 2002 U.S. Dist. LEXIS 23382 (N.D. Cal.
        Dec. 3, 2002) ................................................................................................................ 20

**Statutes**

29 C.F.R. § 825.115(c) .............................................................................................................. 17

29 CFR § 825.113 ..................................................................................................................... 16

29 CFR § 825.114 ..................................................................................................................... 16

29 CFR § 825.115 ..................................................................................................................... 16

29 U.S.C. § 2612(a)(1)(D) ........................................................................................................ 16

29 U.S.C. § 2615 ................................................................................................................. passim

Cal. Civ. Proc. Code § 340 ................................................................................................... 18

Cal. Gov. Code § 12940.............................................................................................passim

Cal. Gov. Code § 12940(n).................................................................................................. 14

**Rules**

Fed. R. Civ. P. 56............................................................................................................... 2

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      STATEMENT OF ISSUES TO BE DECIDED

**Issue 1 -** Is VSS entitled to summary judgment on Plaintiff's disability discrimination claim?

**Issue 2 -** Is VSS entitled to summary judgment on Plaintiff's failure to accommodate claim?

**Issue 3 -** Is VSS entitled to summary judgment on Plaintiff's failure to engage in the interactive process claim?

**Issue 4 -** Is VSS entitled to summary judgment on Plaintiff's Family and Medical Leave Act interference claim?

**Issue 5 –** Are Defendants entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim?

**Issue 6 –** Are Defendants entitled to summary judgment on Plaintiff's negligent infliction of emotional distress claim?

## II.     INTRODUCTION

Plaintiff filed this action against VSS, Germain, and Thompson asserting the following claims: (1) Disability Discrimination under the Fair Employment and Housing Act ("FEHA"); (2) Failure to Accommodate Disability under FEHA; (3) Failure to Engage in Interactive Process under FEHA; (4) Interference with Family and Medical Leave Act ("FMLA") Rights; (5) Intentional Infliction of Emotional Distress; and (6) Negligent Infliction of Emotional Distress.

As developed more fully below, the facts of this case reveal that all of Plaintiff's claims are baseless.  Plaintiff was terminated on May 4, 2012 for violating Company policy by editing her own time.  Despite the fact that Plaintiff admits that she was aware of the policy prohibiting self-editing and does not dispute editing her time and attendance record, Plaintiff alleges that she was actually terminated for her alleged disability and wrongfully denied a leave of absence. However, it is undisputed that Plaintiff never informed VSS that she was disabled or requested a leave of absence.

Plaintiff's claims are based solely on two alleged conversations with Thompson, her District Manager, in April of 2012, where she allegedly informed him that she was "thinking

about taking a stress leave" and then told him that she had decided not to take a leave of absence when he checked in with her one week later.  Plaintiff further alleges that she referenced these conversations at the time she was suspended pending termination for self-editing and also informed VSS, for the very first time, that she had seen a doctor for anxiety. Plaintiff alleges that during her 72-hour suspension, she had her doctor fax VSS a note which addressed Plaintiff's tardiness resulting from the alleged anxiety.  Although VSS has no record of receiving the note (and denies that it was ever sent), Plaintiff's termination had absolutely nothing to do with any attendance issues.  Furthermore, it is undisputed that Plaintiff never requested a leave of absence (at any time before or even during her suspension), or informed VSS that she needed an accommodation due to a disabling condition.  Accordingly, Plaintiff's disability and FMLA claims fail.

Lastly, Plaintiff's emotional distress claims are barred by the statute of limitations. Even if the claims were timely, Plaintiff has not alleged any actions by VSS which amount to "extreme" or "outrageous" conduct and the emotional distress complained of by Plaintiff is not severe under California law.  Accordingly, summary judgment should be granted to Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure on all claims, and Plaintiff's Complaint should be dismissed in its entirety.

## III.   STATEMENT OF FACTS

### A.   The Company and Individual Defendants.

VSS is a national specialty retailer operating over 1,000 stores selling women's fine lingerie and personal accessories.  (Fogarty Decl. ¶ 2).[2]  Each VSS store is staffed by a team of associates, led by a Store Manager.  (Fogarty Decl. ¶ 2).  Each VSS store is typically staffed by a Sales Leadership Team (SLT) including a Store Manager and one or more Assistant Store Managers or Category Managers/Functional Managers.  (Fogarty Decl. ¶ 2).  Sales Associates and Bra Specialists report to the SLT.  (Fogarty Decl. ¶ 2).   The stores are organized

---

[2] Fogarty's declaration and the cited portions of deposition testimony are attached as exhibits to the Declaration of Liana R. Hollingsworth and are referred to herein by the declarant or deponent's last name.

1  geographically into districts, with each district led by a District Manager.  (Fogarty Decl. ¶ 2).

2  Store Managers report to District Managers, and District Managers, in turn, report to Regional

3  Managers.  (Fogarty Decl. ¶ 2).

4    Thompson has been employed by VSS since February 2011, and is currently a District

5  Manager based in Salt Lake City, Utah.  (Thompson Dep. 10-12).  Germain is a former

6  employee who worked for VSS from 2006 through 2013.  (Germain Dep. 12).  During the

7  times relevant to Plaintiff's allegations concerning Germain, she was a District Manager of

8  VSS based in San Jose, California.  (Germain Dep. 17-18).

9    **B.**  **Overview of Plaintiff's Employment History with VSS.**

10    Plaintiff was hired by VSS in 2003 as a part-time Sales Associate.  (Saucedo Dep. 14-

11  15).  In August 2008, Saucedo became an Assistant Store Manager at the Company's Powell

12  Street store in San Francisco, California.  (Saucedo Dep. 16).  In June 2009, Saucedo became

13  the Store Manager of the Company's Stanford store in Palo Alto, California.  (Saucedo Dep.

14  16).  Plaintiff served as the Store Manager of the Stanford store until the termination of her

15  employment on May 4, 2012.  (Saucedo Dep. 16).  Plaintiff had a brief stretch assignment from

16  mid-July through the end of September of 2011, where she temporarily oversaw the Company's

17  Arden Fair Mall store in Sacramento, California.  (Saucedo Dep. 13-14 and 16-17).

18    **C.**  **Relevant VSS Policies and Procedures**.

19    Over the course of Plaintiff's employment, she received training on VSS policies as

20  well as multiple copies of the associate handbook (the "Guide") which enumerates these

21  policies.  (Saucedo Dep. 97, 101-102, 124, 126-127, Exs. 1 and 4).  Plaintiff understood that

22  she was responsible for knowing, enforcing and abiding by VSS policies, and that her

23  employment could be terminated for violating these policies.  (Saucedo Dep. 97-98, 103).

24  Plaintiff also knew that, as a Store Manager, she had the additional responsibilities of training

25  other associates about Company policies, and "lead[ing] by example" in carrying out the terms

26  of these policies.  (Saucedo Dep. 102, Ex. 1 at VSS000114).

27    The Guide contains several policies pertinent to this case, including the Company's

28  Equal Opportunity Policy, Accommodating Disabilities, and Open Door Policy.  (Saucedo Dep.

1  104-109, 123, Ex. 1 at VSS000114-115, VSS000120-121).   The Guide clearly informs

2  associates that discrimination on the basis of a disability, or any other protected category, is

3  prohibited and further reflects VSS' commitment to accommodating associates with

4  disabilities.  (Saucedo 104-106, Ex. 1 at VSS000114-115).

5  The Guide also identifies the avenues associates may take to voice any concerns about

6  their employment, including reaching out to a direct supervisor (or anyone in their supervisor's

7  chain of command), a Human Resources partner, or calling the Company's Ethics Hotline

8  which is available 24 hours a day, seven days a week.  (Saucedo Dep. 107-109, Ex. 1 at

9  VSS000120).  Additionally, if associates have any concerns or questions about any benefits of

10  employment, such as leaves of absence, then they can contact the benefits arm of Human

11  Resources, referred to as HR Direct.  (Saucedo Dep. 109-111).  As a Store Manager, Plaintiff

12  was directly responsible for ensuring "that other associates understand how to report concerns."

13  (Saucedo Dep. 102-103, Ex. 1 at VSS000114).  In fact, the telephone numbers for the Ethics

14  Hotline and/or HR Direct, and the District Manager were posted in Plaintiff's store when she

15  was a Store Manager.  (Saucedo Dep. 114).

16  The Guide further enumerates the values the Company expects its associates to follow.

17  One such value, entitled "It Matters How We Play the Game," provides that VSS associates

18  must follow the Company's beliefs and rules even when nobody is watching.  (Saucedo Dep.

19  Ex. 1 at VSS000145).  VSS' policies regarding accurate recordkeeping are also located in the

20  Guide, and instruct associates not to "falsify, manipulate, misrepresent or omit facts on

21  documents, records or reports including . . . time sheets."  (Saucedo Dep. 103, Ex. 1 at

22  VSS000114).

23  With regard to time records, the Guide specifically states "do not edit your own time"

24  and provides that "[a]ny self-editing, manipulation, falsification or misrepresentation . . . may

25  result in disciplinary action up to and including termination."   (Saucedo Dep. Ex. 1 at

26  VSS000148).  The prohibition against self-editing one's own time records is also contained in

27  VSS' Standard Operating Procedures Manual ("SOP") and reads: **"SLT members may not**

28

1   **edit their own time**."[3] (emphasis in original) (Fogarty Decl. ¶ 4, Ex. 1).  It is undisputed that

2   Plaintiff was aware of the Company's policy against self-editing during her employment and

3   understood that if an SLT member needed to edit their time, then they needed to have another

4   SLT member process the edit.  (Saucedo Dep. 121-123, 195).

D.   **VSS Receives A Complaint That Plaintiff Is Not Working Her Scheduled**
5        **Shifts And, While Investigating the Complaint, Discovers that Plaintiff**
6        **Edited Her Own Time In Violation of Company Policy.**

7        In March of 2012, Plaintiff's District Manager, Leah Heil, went on maternity leave and

8   Thompson became the Acting District Manager for Plaintiff's district during Heil's absence.

9   (Saucedo Dep. 24; Thompson Dep. 12).   Thompson remained Plaintiff's District Manager for

10  the remainder of her employment.  (Saucedo Dep. 24).

11       Sometime in mid-April of 2012, a member of Plaintiff's SLT called Thompson and

12  complained that Plaintiff had not been working her scheduled shifts.  (Thompson Dep. 22-24;

13  Saucedo Dep. 100; Germain Dep. 23-24).   After receiving the complaint, Thompson reached

14  out to Human Resources Manager, Kathleen Fogarty, and Germain (a more experienced

15  District Manager) for their guidance and support.  (Thompson 45 and 62; Germain Dep. 23-24;

16  and Fogarty Decl. ¶ 5).   Thompson and Germain discussed Thompson pulling and reviewing

17  Plaintiff's recent time and attendance records as the appropriate next step.  (Thompson Dep.

18  62-63; Germain Dep. 28-30 and 33-34).

19       Thompson reviewed Plaintiff's time and attendance reports from April of 2012, and the

20  records revealed that Plaintiff had self-edited her time on multiple occasions.  (Thompson Dep.

21  63-65; Germain Dep. 43-46; Fogarty Decl. ¶¶ 6-7, Ex. 3).   In fact, on Plaintiff's time and

22  attendance report for the week beginning April 15, 2012 and ending April 21, 2012, there were

23  a total of nine edits, four edits made by the Plaintiff and five edits made by other members of

24  the SLT.  (Fogarty Decl. ¶ 7, Ex. 3).   For the week beginning April 22, 2012 and ending April

25

---

26  [3] Plaintiff admits that she was familiar with the SOP during her employment and understood
27  that she was required to follow the policies therein.  (Saucedo Dep. 111-113 and 130).  Plaintiff
    also admits that she was aware of the policy that "SLT members may not edit their own time,"
28  but testified that she did not remember seeing this policy codified in the SOP.  (Saucedo Dep.
    121-123).

28, 2012,  Plaintiff's time was edited a total of eleven times, twice by Plaintiff and nine times by other members of the SLT.  (Fogarty Decl. ¶ 7, Ex. 3).[4]

**E.     On May 1, 2012, Plaintiff Admits to Editing Her Own Time And Is Suspended.**

Under Fogarty's guidance, Thompson and Germain met with Plaintiff at the Stanford store on May 1, 2012, to discuss her time and attendance records with her and see what she had to say regarding the self-edits.   (Saucedo Dep. 168-171; Germain Dep. 49-51 and 62-63; Thompson Dep. 14-16; and Fogarty Decl. ¶ 8).  Plaintiff was aware that Germain was a District Manager, but had not previously met or had any interactions with her prior to the May 1, 2012 meeting. (Saucedo Dep. 170-171; Germain Dep. 20).

During the meeting, Plaintiff acknowledged her awareness of Company policies regarding time records, including the prohibition against managers editing their own time. (Thompson Dep. 55, Ex. 3; Germain Dep. 72-73).   Plaintiff was then shown her time and attendance reports from recent weeks.  (Germain Dep. 72-73).  When asked whether she had ever edited her own time, Plaintiff admitted to self-editing on only one occasion—Saturday, April 21, 2012. (Saucedo Dep. 173-174, 183, 203).[5]

As to the remaining self-edits, Plaintiff explained that other SLT members had edited her time under her employee ID number.   (Saucedo Dep. 175-183). Specifically, Plaintiff claimed that each time the Company's time records reflect that she edited her own time: she was logged onto the Stanford's store computer under her employee ID number; she left the computer and failed to sign off; she asked another SLT member to edit her time; that SLT member failed to sign Plaintiff out of the computer system and failed to sign in under their own employee ID number; and that the SLT member edited Plaintiff's time.  (Saucedo Dep. 175-

---

[4]  Shockingly, a review of Plaintiff's 2012 time records through April 14, 2012 reveals additional self-edits. (Fogarty Decl. ¶ 13).

[5]  According to Plaintiff, she changed her own hour code on April 21, 2012—not the amount of hours she worked.  (Saucedo Dep. 174-175).  While Plaintiff attempts to differentiate between "stealing time" from the Company and self-editing which does not provide any economic benefit to an associate (Saucedo Dep. 174-175, 198), all self-editing is expressly prohibited by Company policy, regardless of the reason for the edit.  (Saucedo Dep. Ex. 1 at VSS000148; Fogarty Decl. ¶ 4, Ex. 1; Thompson Dep. 96-97 ("it's not honest to edit your time sheet in any circumstance")).

1  183).  According to Plaintiff, she and her SLT members frequently failed to properly log off of

2  their accounts.  (Saucedo Dep. 181-183).  Plaintiff admits that she was aware that inaccurate

3  time records were being generated which showed that she was editing her own time when the

4  edits, according to Plaintiff, were actually made by others.  (Saucedo Dep. 181-183).[6]

5        Based on Plaintiff's admission that she edited her own time,[7] Thompson and Germain

6  suspended her with pay for 72 hours so they could consult with Fogarty.  (Germain Dep. 84-85;

7  Thompson Dep. 86-87; Saucedo Dep. 185-186).

8      **F.**  **During the May 1, 2012 Meeting, Plaintiff Alleges That She Discussed Her Anxiety and How She Had Previously Considered Taking A "Stress Leave".**

10        During the May 1, 2012 meeting, Plaintiff also alleges that she explained to Thompson

11  and Germain that she was not working her scheduled shifts due to the fact that she was seeing a

12  doctor for anxiety and could obtain a doctor's note addressing any attendance issues.  (Saucedo

13  Dep. 174-175 and 235-236).  According to Plaintiff, she started to adjust her scheduled shifts in

14  April of 2012 whenever she woke up feeling drowsy due to an anxiety medication she had been

15  prescribed.  (Saucedo Dep. 159-162).  Plaintiff claims that she would stay at work late when

16  she couldn't start her shift as scheduled to make up the missed time.  (Saucedo Dep. 159-162).

17  Plaintiff alleges that she never missed any days that she was scheduled to work during the April

18  – May 2012 timeframe.  (Saucedo Dep. 163).

19        Additionally, Plaintiff alleges that she told Thompson and Germain that her anxiety was

20  also the reason that she had previously considered, but ultimately decided against, taking a

_____

[6]  In addition to creating inaccurate time records in violation of Company policies, Plaintiff's explanation that neither she nor the members of her SLT would properly log off of the computer and would access VSS' systems through one another's accounts reveals additional violations of VSS' policies regarding technology.  The Guide prohibits sharing "password login information with any other person or entity" and using "other individuals' account names or passwords."  (Saucedo Dep. 101-102, Ex. 1 at VSS000130-VSS000133; Thompson Dep. 92 (associates must be responsible and ensure that they always log off the computer)).

[7]  Prior to the May 1, 2012 meeting, Thompson, Germain and Fogarty discussed what they would do if Plaintiff admitted to editing her own time. (Germain Dep. at 91-93, Ex. 4 at VSS000544; Fogarty Decl. ¶ 6, Ex. 2). Specifically, they discussed whether or not they would immediately suspend Plaintiff pending an ultimate determination.  (*Id.*). One consideration in deciding to suspend Plaintiff if she admitted to self-editing was the fact that her policy violation was uncovered due to a complaint brought by one of Plaintiff's subordinates and the Company wanted to protect the subordinate from possible retaliation.  (Germain Dep. 93-94).

"stress leave."  (Saucedo Dep. 174-175).  Specifically, Plaintiff alleges that on or around April 13, 2012, she and Thompson were discussing over the phone one of the open positions that she needed to fill in her store, and she told him: "I'm thinking about taking a stress leave" because "all of this is getting to be too much."  (Saucedo Dep. 151-154).  According to Plaintiff, Thompson said, "Ok. I'll check in with you next week and see how you're feeling."  (Saucedo Dep. 154).  It is undisputed that Plaintiff did not contact HR, HR Direct, or the Ethics Hotline (or anyone else at VSS, aside from her subordinates) concerning her thoughts about taking a stress leave.  (Saucedo Dep. 151-154, 157-158).  According to Plaintiff, Thompson followed-up with her one week later and Plaintiff told him that she was no longer thinking about taking a stress leave.  (Saucedo Dep. 155-157).

After raising the issue of previously considering a stress leave, Plaintiff alleges that Germain asked her whether she was interested in other options such as going back to school (since Plaintiff mentioned that she only finished her first year of fashion school), or moving back to her former position at the Company's Powell Street store (since Plaintiff mentioned how much she loved working there).  (Saucedo Dep. 72, 183-184, 235).  At no point during the May 1, 2012 meeting, did Plaintiff request or express any interest in taking a leave absence of due to any anxiety or stress she may have been experiencing.  (Saucedo Dep. 184-185).

### G.   After She Is Suspended, Plaintiff Allegedly Has Her Doctor Fax a Note to HR.

Plaintiff alleges that immediately after she was suspended, she went to her doctor's office and had her doctor fax a note to HR in her presence.  (Saucedo Dep. 187-188, Ex. 7). The note states that Plaintiff had experienced grogginess due to medication and asks the Company to excuse her past tardiness.  (Saucedo Dep. 187-188, Ex. 7).  The note, which was allegedly sent after she had already been suspended, was the first document from a medical provider that Plaintiff allegedly asked to be submitted to VSS on her behalf.  (Saucedo Dep. 188).  Plaintiff does not know the number the doctor's note was allegedly faxed to and VSS has no record of ever receiving the doctor's note.  (Saucedo Dep. 187-188; Fogarty Decl. ¶ 11). Moreover, Plaintiff's doctor's office does not generally fax notes or certification forms directly

to its patients' employers and has no record, notation, or fax confirmation indicating that the note at issue was ever faxed. (Valle Dep. 28-30 and 41-45). Plaintiff never checked with anyone at the Company to see if they received the doctor's note. (Saucedo Dep. 188-189).

**H.     Plaintiff's Employment Is Terminated on May 4, 2012, Due to Her Serious Policy Violation.**

Thompson and Germain relayed the information regarding the self-edits that they gathered from the May 1, 2012 meeting to Fogarty. (Thompson Dep. 87-90; Fogarty Decl. ¶ 8). Thompson, Germain, and Fogarty discussed Plaintiff's blatant violation of Company policies which expressly prohibit self-editing time records. (Thompson Dep. 90-93 and 98-99; Fogarty Decl. ¶¶ 8 and 10). Given the seriousness of Plaintiff's multiple policy violations, Fogarty determined that they were going to move forward with the termination of Plaintiff's employment. (Thompson Dep. 44-45 and 98-99; Germain 90-91; Fogarty Decl. ¶ 10).

On May 4, 2012, Thompson and Germain met with Plaintiff to relay VSS' decision to separate her employment, and Fogarty participated in the meeting via telephone. (Thompson 44-45 and 100-101; Germain 96-98; Fogarty Decl. ¶ 10; Saucedo Dep. 192-194). Germain informed Plaintiff that her employment was being terminated for editing her own time. (Germain Dep. 96-100; Saucedo Dep. 192-194, 203-204, Ex. 8).[8]

**I.     Plaintiff's Allegations of Emotional Distress**

Plaintiff claims that she started to experience feelings of anxiety at the end of her stretch assignment at the Company's Arden Fair Mall store in September of 2011 due to her additional job responsibilities. (Saucedo Dep. 11-20). Additionally, Plaintiff alleges that she found it difficult to connect with her new Regional Manager who took over Plaintiff's region in July of 2011. (Saucedo Dep. 24-25, 30-33). According to Plaintiff, her former Regional Manager would visit the Stanford store, talk to her about the business, and ask for her opinions and feedback, whereas her new Regional Manager visited her store unannounced and coached her on bra displays which did not meet the Company's visual standards. (Saucedo Dep. 30-33).

---

[8] Because of Plaintiff's years of service for the Company, VSS offered Plaintiff a severance package which she declined. (Saucedo Dep. 204 and 217-218).

1   Plaintiff alleges that she began experiencing feelings of hopelessness and could not handle her

2   emotions or think clearly.  (Saucedo Dep. 12-13 and 17-18).

3        Plaintiff alleges that these feelings became more pronounced after she returned to the

4   Stanford store in September of 2011 and continued to worsen through March of 2012, due to

5   various changes in her work environment.  (Saucedo Dep. 21-29, 33-34).  Specifically, Plaintiff

6   alleges that she was stressed due to the fact that the volume level of the Stanford store was

7   increased, which created an Assistant Store Manager position that Plaintiff needed to fill.

8   (Saucedo Dep. 22-29 and 33-34).

9        Plaintiff alleges that she was also troubled by Heil's maternity leave and having to deal

10  with a new District Manager, in addition to the new Regional Manager.  (Saucedo Dep. 22-23).

11  Although her interactions with Thompson were minimal, Plaintiff found him to be too direct

12  and brief in his communications and preferred Heil's management style.  (Saucedo Dep. 25-

13  28).  Plaintiff also claims that Thompson's word choices were demeaning and alleges that he

14  referred to the red streaks in her hair as "ghetto" on two occasions.  (Saucedo Dep.25-29 and

15  134-137).

16       Although Plaintiff alleges that she was feeling stressed from September of 2011

17  through March of 2012, she did not seek any medical treatment.  (Saucedo Dep. 20-21, 34-36,

18  148-151).  Nor did Plaintiff contact her District Manager or anyone in HR or HR Direct to

19  discuss her feelings of stress or anxiety or to request a leave of absence, despite knowing how

20  to do so.[9]  (Saucedo Dep. 148-151).  In fact, Plaintiff called HR on behalf of one of her

21  associates who was struggling with mental/emotional problems.  (Saucedo Dep. 208-209).

22       According to Plaintiff, her anxiety caused her to gain 20 lbs, cry at work on a few

23  occasions, and sometimes lose interest in putting on her makeup and doing her hair before

24  work.  (Saucedo Dep. 42-47).  While Plaintiff attributes all of the stress she was feeling during

25  this time period to her employment with VSS, two of Plaintiff's nieces were diagnosed with

26  epilepsy and suffer from seizures and Plaintiff's grandmother also passed away in January of

27  ────────────────

28  [9]  Plaintiff alleges that she shared workplace pressures with fellow Store Managers in her
    District and believes that her SLT team observed her feeling stressed. (Saucedo Dep. 138-148).

2012. (Saucedo Dep. 36-38). Her grandmother's passing was admittedly "difficult" on Plaintiff. (Saucedo Dep. 36-38). Additionally, Plaintiff's doctor's note from May 1, 2012, even acknowledges that Plaintiff has "numerous personal stress issues relating to [her] family." (Saucedo Dep. 187-188, Ex. 7).

Plaintiff sought medical treatment for her alleged emotional distress for the first time on April 13, 2012, and was prescribed Xanax which stopped Plaintiff from having emotional breakdowns. (Saucedo Dep. 20-21, 34-36, 65-67, 151-152). Although Plaintiff alleges that she considered taking a stress leave after her doctor's appointment, it is undisputed that Plaintiff never requested a "stress leave" or a leave of absence under the FMLA at any point before or after April 13, 2012, through the date of her separation on May 4, 2014. (Saucedo Dep. 151-154, 157-158, 164-165). Moreover, it is undisputed that Plaintiff never told anyone at VSS that she thought she was disabled. (Saucedo Dep. 205).

## IV.   LAW AND ARGUMENT

### A.   Plaintiff's Disability Claims Fail.

It is unclear from the Complaint whether Plaintiff is attempting to assert her failure to accommodate, failure to engage in the interactive process, and disability discrimination claims against Germain and Thompson, individually, in addition to VSS. The public policy of California, however, does not support individual liability for these claims under FEHA. *See e.g. Reno v. Baird*, 18 Cal.4th 640, 643, 76 Cal. Rptr. 2d 499, 957 P.2d 1333 (1998); *Kennedy v. Kings Mosquito Abatement Dist.*, Case No. 1:12cv1458, 2013 U.S. Dist. LEXIS 107652 (E.D. Cal. July 30, 2013); *Ball v. Los Rios Cmty. College Dist.*, Case No. 2:04cv0970, 2007 U.S. Dist. LEXIS 43578 (E.D. Cal. June 14, 2007). Accordingly, Germain and Thompson request that this Court dismiss Plaintiff's disability claims against them to the extent the Complaint is construed to assert such claims.

### 1.   Plaintiff Cannot Establish a Failure to Accommodate Claim.

In order to establish a failure to accommodate claim under FEHA, Plaintiff must prove that: (1) she has a covered disability; (2) she is a qualified individual, who can perform the essential functions of the position; and (3) VSS failed to reasonably accommodate the plaintiff's

11

known disability.  *McClelland v. Permanente Med. Group, Inc.*, 2013 U.S. Dist. LEXIS 40708 (E.D. Cal. Mar. 22, 2013).  Plaintiff cannot prove the second or third elements of her claim.

First, Plaintiff cannot establish that she is a qualified individual.  A qualified individual is "an individual with a disability who (1) satisfies the requisite skill, experience, education and other job-related requirements of the employment position, and (2) who with or without reasonable accommodation, can perform the essential functions of such position."  *Kelley v. Corr. Corp. of Am.*, 750 F. Supp.2d 1132 (E.D. Cal 2010) (internal citations omitted).

Here, Plaintiff was not performing competently in her role as Store Manager.  It is undisputed that Plaintiff understood that, as a Store Manager, she was responsible for knowing, enforcing, and abiding by VSS' policies and was required to lead by example.  (Saucedo Dep. 97-98, 102).  Plaintiff, however, admits that she edited her own time in violation of Company policies.  (Saucedo Dep. 173-174, 183, 203).  Plaintiff also admits that she and her SLT members frequently failed to properly log off the computer, accessed one another's accounts, and created inaccurate time records in further violation of VSS' policies.  (Saucedo Dep. 175-183, Ex. 1 at VSS000114, VSS000130-VSS000133, VSS000148).  Plaintiff even admits that she was aware that all of these infractions were being committed and failed to coach or counsel her SLT members on any of these issues.  (Saucedo Dep. 196-198).

Second, Plaintiff cannot establish that VSS failed to reasonably accommodate any known disability.  Plaintiff's Complaint alleges that Defendants failed to reasonably accommodate her in April of 2012, when Plaintiff informed Thompson "that she was feeling very stressed, had a related medical condition, and wished to take a stress leave."  (Complaint at ¶ 6).  However, Plaintiff's deposition testimony makes clear that she neither informed Thompson of any disabling medical condition nor requested a leave of absence.  Rather, Plaintiff testified that she informed Thompson that she was "thinking about taking a stress leave" because work was "getting to be too much."  (Saucedo Dep. 153-154).

It is well-established that an employee has "the burden of giving the employer notice of the disability."  *Holtzclaw v. Certainteed Corp.*, 795 F.Supp.2d 996, 1018 (E.D. Cal. 2011) (internal citations omitted).  Here, Plaintiff admits that she never told anyone at VSS that she

1  thought she was disabled (Saucedo Dep. 205), and her vague conversation with Thompson

2  regarding her stressful job situation simply did not provide VSS with notice of any alleged

3  disability.

4       For example, in *Arn v. News Media Group*, Case No. 02-2060, 2004 U.S. Dist. LEXIS

5  31324, *20-21 (E.D. Cal. Apr. 29, 2004),[10] the District Court held that the employee did not

6  provide notice of a qualifying disability under FEHA by informing his employer that his job

7  situation was stressful. The *Arn* decision rightly notes that "[e]very job has some stress, but that

8  does not put every employer on notice of a condition rendering every employee disabled." *Id.*

9  at *21.  Accordingly, because Plaintiff did not inform Thompson of her alleged disability, VSS

10  had no duty to accommodate as a matter of law.  *See e.g. Foster v. City of Oakland*, 649 F.

11  Supp.2d 1008, 1022 (N.D. Cal. 2009) (an employer's duty to accommodate arises only when

12  the employer had knowledge of the employee's disability).

13       Additionally, it is undisputed that Plaintiff never requested any accommodations during

14  her alleged conversations with Thompson in April of 2012.  While Plaintiff informed him she

15  was "thinking about taking a stress leave" it is undisputed that when Thompson checked in

16  with her a week later, she told him that she no longer was thinking about taking a leave of

17  absence.  (Saucedo Dep. 155-156).  Plaintiff's failure to request an accommodation is fatal to

18  her failure to accommodate claim.  *See e.g. Klein v. Raytheon Co.*, Case No. 08-6461, 2009

19  U.S. Dist. LEXIS 106666, *30-31 (C.D. Cal. Nov. 2, 2009) (granting summary judgment where

20  employee never requested an accommodation for his mental health disability).

21       It is unclear whether Plaintiff is also claiming that VSS failed to provide reasonable

22  accommodations on May 1, 2012.  If so, this claim similarly fails.  While Plaintiff alleges that

23  she informed VSS for the first time that she was seeing a doctor for anxiety during the May 1,

24  2012 meeting, she admits that she did not request a leave of absence at any point during the

25  meeting.  (Saucedo Dep. 184-185, 235).  Moreover, it is undisputed that Plaintiff did not

26  contact HR, HR Direct or anyone else at VSS at any time regarding taking a stress leave or to

27  ask for help with her job. (Saucedo Dep. 148-154, 157-159, 164-168).

28    [10] Affirmed on appeal by *Arn. News Media Group*, 175 Fed. App'x 844 (9th Cir. 2006).

### 2. Plaintiff's Failure to Engage in the Interactive Process Claim Also Fails.

Despite the fact that Plaintiff has alleged a separate claim for VSS' alleged failure to engage in the interactive process, this claim is inextricably linked to Plaintiff's failure to accommodate claim and necessarily fails. An employee must initiate the interactive process by informing the employer of the employee's disability and need for accommodations. *See Scotch v. Art Institute of Ca.*, 173 Cal. App. 4th 986, 1013 (Cal. App. 4th Dist. 2009). By the plain terms of the statute, it is only when an employer refuses to engage in an interactive process "in response to a request for reasonable accommodation" that the employer may be held liable. Cal. Gov. Code § 12940(n).

As set forth above, Plaintiff never requested any accommodations. Accordingly, VSS is entitled to summary judgment on Plaintiff's cause of action for failure to engage in the interactive process. *See e.g. Hajianpour v. Synova, Inc.*, Case No. 12-1765, 2012 U.S. Dist. LEXIS 161272, *23-24 (C.D. Cal. Nov. 5, 2012) (summary judgment appropriate on the plaintiff's failure to engage in an interactive process and failure to accommodate claims where he never requested an accommodation from his employer).

### 3. Plaintiff Cannot Establish That She Was Wrongfully Terminated on the Basis of Her Disability.

To establish a *prima facie* case of disability discrimination under FEHA, Plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) some other circumstances that suggest a discriminatory motive. *Neumeyer v. Wawanesa Gen. Indus. Co.*, Case No. 14cv181, 2015 U.S. Dist. LEXIS 59024, *29 (S.D. Cal. Apr. 24, 2015). Here, Plaintiff cannot establish a *prima facie* case of discrimination because she was not performing competently as a Store Manager, as set forth above, and because there is no evidence whatsoever that suggests a discriminatory motive on the part of VSS.

Moreover, even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of disability discrimination, which she cannot, her claim still fails because she was terminated for a legitimate, non-discriminatory reason which is not pretextual. *See e.g. Jackson v. Simon Prop.*

1   *Group, Inc.*, 795 F. Supp. 2d 949, 959 (N.D. Cal. 2011) ("Once a plaintiff has established a

2   *prima facie* case, the burden shifts to the employer to produce some evidence that it had

3   legitimate, nondiscriminatory reasons for the employment decision. . . . [o]nce an employer has

4   produced such evidence, the plaintiff can survive summary judgment only by providing

5   significant, substantial evidence of pretext").

6         Plaintiff's employment ended for the simple but obvious reason that she edited her own

7   time in violation of Company policy. (Fogarty Decl. ¶¶ 8-10; Saucedo Dep. 203-204, Ex. 8).  It

8   is well-established that terminating an employee for violating company policy constitutes a

9   legitimate, non-discriminatory reason for the employee's discharge.  *See e.g. Tomada v. Home*

10  *Depot U.S.A., Inc.,* 2014 U.S. Dist. LEXIS 76343 (N.D. Cal. June 3, 2014) (defendant met its

11  burden of articulating a legitimate, nondiscriminatory reason for terminating the plaintiffs

12  where the plaintiffs violated company policy).

13        Plaintiff's suspension and termination had absolutely nothing to do with her alleged

14  disability or adverse reaction to a prescribed medication.  In fact, VSS made the determination

15  to suspend Plaintiff in the event she admitted to self-editing prior to the May 1, 2012 meeting

16  when it allegedly learned for the first time that Plaintiff had received medical treatment for

17  anxiety. (Germain Dep. at 91-93, Ex. 4 at VSS000544; Fogarty Decl. ¶ 6, Ex. 2; Saucedo Dep.

18  174-175 and 235-236).   Moreover, even assuming for purposes of this Motion that VSS

19  received the doctor's note on May 1, 2012 (which it vehemently denies), the doctor's note

20  addressed Plaintiff's tardiness—not self-editing—which was not the basis of the Company's

21  decision to separate her employment.  (Saucedo Dep. 187-188, Ex. 7; Fogarty Decl. ¶¶ 8-10

22  and 12).  In short, Plaintiff can point to no evidence whatsoever that VSS' stated reason for

23  terminating Plaintiff was a pretext for impermissible discrimination.

24      **B.**    **Plaintiff's FMLA Interference Claim Fails.**

25        To make out an FMLA interference claim, Plaintiff must establish that: (1) she was

26  eligible for the FMLA's protections; (2) VSS was covered by the FMLA; (3) she was entitled to

27  leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5)

28  VSS denied him FMLA benefits to which she was entitled. *Escriba v. Foster Poultry Farms,*

1  *Inc.*, 743 F.3d 1236, 1243 (9th Cir. Cal. 2014). Plaintiff's interference claim fails because she

2  cannot establish that she was entitled to leave under the FMLA or that she provided sufficient

3  notice of her intent to take leave.

4  **1.   Plaintiff Was Not Entitled To Leave Under the FMLA.**

5       Under the FMLA, an eligible employee is entitled to leave "because of a serious health

6  condition that makes the employee unable to perform the functions of the position of such

7  employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" entitling an employee to

8  FMLA leave means an illness that involves either "inpatient care" or "continuing treatment" by

9  a health care provider. 29 CFR § 825.113. "Inpatient care" means an overnight stay in a

10  hospital or medical facility. 29 CFR § 825.114. "Continuing treatment" means: (1) a period of

11  incapacity more than three consecutive, full calendar days plus subsequent treatment; (2)

12  pregnancy or prenatal care; (3) conditions requiring multiple treatments for restorative surgery

13  or a condition that would lead to incapacity in the absence of medical intervention or treatment,

14  such as cancer, severe arthritis or kidney disease; or (4) a chronic condition. 29 CFR §

15  825.115.

16       The crucial moment for determining if a condition qualifies as a serious health

17  condition for FMLA purposes is the time the leave is requested. *See e.g. Navarro v. Pfizer*

18  *Corporation*, 261 F.3d 90 (1st Cir. 2011). In this case, a proper analysis demonstrates that

19  Plaintiff did not have the requisite "serious health condition" under any of the regulatory

20  criteria. Plaintiff has not alleged any inpatient care or incapacitation period of more than three

21  consecutive days. Rather, Plaintiff admits that she visited a medical provider for the first time

22  on April 13, 2012 before speaking to Thompson regarding a "stress leave", and never missed

23  any days she was scheduled to work during the April – May 2012 timeframe. (Saucedo Dep.

24  20-21, 34-36, 151-154, 159-160, 163). Additionally, Plaintiff has not alleged that she was

25  receiving treatment for pregnancy or prenatal care or a condition that would lead to incapacity

26  without medical intervention.

27       Lastly, there is no competent evidence that Plaintiff was suffering from a "chronic

28  condition." A chronic condition is one which: (1) requires periodic visits to a health care

1    provider (defined as twice per year); (2) may cause episodic rather than a continuing period of

2    incapacity; and (3) continues over an extended period of time.  29 C.F.R. § 825.115(c).  Here,

3    Plaintiff has not offered any evidence that she saw a health care provider on two occasions

4    prior to her discussions with Thompson or that her anxiety resulted in any period of incapacity.

5    Additionally, Plaintiff's anxiety had not continued over an extended period of time when she

6    was allegedly seeking FMLA leave.  Plaintiff testified that she had been experiencing distress

7    for only seven months (since September of 2011), and her doctor stated that she had been

8    experiencing symptoms for only five months (since November of 2011). (Saucedo Dep. 11-13,

9    17-20, 187-188, Ex. 7).

10    Because Plaintiff has not established that she suffered from a serious health contention,

11    she was not entitled to leave under the FMLA as a matter of law.

12    **2.    Plaintiff Did Not Provide Notice of Her Intent to Take FMLA Leave.**

13    It is undisputed that Plaintiff never requested FMLA leave (or any other leave of

14    absence) during her employment.  (Saucedo Dep. 148-154, 157-158, 164-167).   Moreover,

15    Plaintiff's alleged conversations with Thompson about considering, but ultimately deciding

16    against, taking a "stress leave" are insufficient to satisfy her notice obligation under the FMLA.

17    *See e.g. Edwards v. Dialysis Clinic, Inc.*, 423 F. Supp.2d 789, 795 (S.D. Ohio 2006)

18    (concluding that plaintiff never requested to take FMLA leave for a serious health condition,

19    but, rather, only told her employer "that she was *considering* taking FMLA leave for that

20    purpose and ultimately decided not to take FMLA leave") (emphasis added).

21    Because Plaintiff never provided sufficient notice of her intent to take FMLA leave,

22    VSS is entitled to summary judgment as a matter of law.  *See e.g. Krouse v. Ply Gem Pac.*

23    *Windows Corp.*, 803 F. Supp. 2d 1220, 1229 (D. Or. 2011) (granting summary judgment where

24    the plaintiff "never requested leave or took any action that would bring him under the

25    protections of the FMLA").

26    **C.    Plaintiff's Emotional Distress Claims Also Fail.**

27    Plaintiff's intentional and negligent infliction of emotional distress claims are subject to

28    a one-year statute of limitations period.  *See Billmeyer v. Plaza Bank of Commerce*, 42 Cal.

17    Case No.  5:13-cv-04860-EJD

1    App. 4th 1086 (Ct. App. 1995); Cal. Civ. Proc. Code § 340.  Here, Plaintiff's employment was

2    terminated on May 4, 2012, and she filed her Complaint on June 28, 2013.  (Saucedo Dep. 192-

3    194; Complaint).  Since Plaintiff did not file her Complaint until after the one-year statute of

4    limitations expired, Defendants are entitled to summary judgment on Plaintiff's emotional

5    distress claims.  *See Williams v. Sun. Microsystems*, Case No. H029828, 2007 Cal. App.

6    Unpub. LEXIS 6424, *28-29 (Cal. App. 6th Dist. Aug. 7, 2007).

7    Even if Plaintiff's claims had been timely filed, the claims against Thompson and

8    Germain, individually, must be dismissed as a matter of law.  Both claims for emotional

9    distress are based on Plaintiff's discrimination claims under FEHA.  However, since Thompson

10   and Germain cannot be held liable under FEHA because they are not considered to be

11   Plaintiff's employer, they cannot be held liable for the emotional distress claims based on

12   FEHA violations either.  *See Smith v. Int'l Brotherhood of Elec. Workers*, 109 Cal. App. 4th

13   1637, 1645 (Cal. App. 2d Dist. 2003) (abrogated on other grounds).

14   Although not needed, the following additional grounds exist for granting VSS

15   summary judgment on each of Plaintiff's emotional distress claims.

16       **1.    Plaintiff Cannot Establish An Intentional Infliction of Emotional**
           **Distress Claim Against VSS.**
17

18   To succeed on her claim for intentional infliction of emotional distress, Plaintiff must

19   show: (1) extreme and outrageous conduct by Defendants either with intent or reckless

20   disregard; (2) severe and extreme emotional distress suffered by Plaintiff; and (3) actual and

21   proximate causation.  *Pleasant v. Autozone, Inc.*, No. CV-12-07293, 2013 U.S. Dist. LEXIS

22   86360, at *27 (C.D. Cal. June 19, 2013).

23   First, Plaintiff does not allege any sufficiently extreme or outrageous conduct by any of

24   the Defendants.  In order to qualify as outrageous, the conduct alleged "must be so extreme as

25   to exceed all bounds of that usually tolerated in a civilized community."  *Id.*  Plaintiff alleges

26   that her stretch assignment, the increase in the Stanford's store volume, and dealing with the

27

28

1   management styles of new District and Regional Managers[11] caused her emotional distress.

2   (Saucedo Dep. 11-13, 17-29, 30-34, 134-137).  However, conduct that is not "beyond what is to

3   be expected from a normal employment relationship" cannot support an emotional distress

4   claim.  *Jersey v. John Muir Med. Ctr.*, 97 Cal. App. 4th 814 (2002); *see also Janken v. Gm*

5   *Hughes Electronics*, 46 Cal. App. 4th 55, 80 (Cal. Ct. App. 1996) ("A simple pleading of

6   personnel management activity is insufficient to support a claim of intentional infliction of

7   emotional distress, even if improper motivation is alleged").

8          Additionally, because Plaintiff's intentional infliction of emotional distress claim and

9   discrimination claims against VSS share the same underlying facts and the discrimination

10  claims fail, Plaintiff's emotional distress claim against the Company also fails.  *See Black v.*

11  *Baxter Healthcare Corp.*, No. 96-55749, 1997 U.S. App. LEXIS 30422, at *13-14 (9th Cir.

12  1997) (summary judgment on emotional distress claims where plaintiff failed to establish

13  discrimination); *Pleasant,* 2013 U.S. Dist. LEXIS 86360, at *27-28 (summary judgment on

14  emotional distress claim where termination was for legitimate, nondiscriminatory reasons);

15  *Casagrande v. Allied Blending & Ingredients, Inc.*, No. CV-12-00498, 2013 U.S. Dist. LEXIS

16  4796, at *6-7 (C.D. Cal. Jan. 10, 2013) (emotional distress claim failed where plaintiff did not

17  establish discrimination).

18         Second, even if Plaintiff could establish that she was subject to extreme and outrageous

19  conduct, she has not presented evidence that she suffered from severe emotional distress.  The

20  California Supreme Court has stated that "[w]ith respect to the requirement that the plaintiff

21  show severe emotional distress, this court has set a *high bar*."  *Hughes v. Pair*, 46 Cal. 4th

22  1035, 1050 (2009) (emphasis added).  Emotional distress including anxiety, worry, concern,

23  difficulty sleeping, and agitation are not sufficiently severe.  *See Lawler v. Montblanc N. Am.*

24  *LLC*, 704 F.3d 1235, 1246 (9th Cir. 2013) (holding that plaintiff's emotional injuries such as

25  anxiety, sleeplessness, upset stomach and muscle twitches "clearly" did not rise to the level of

---

26  [11]  Plaintiff's allegation that Thompson referred to the red streaks in her hair as ghetto on two

27  occasions also fails to rise to the level of extreme and outrageous conduct. *See Cochran v. Cochran*, 65 Cal. App. 4th 488 (1998) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of

28  decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.").

1    "severe"); *Girard v. Ball*, 125 Cal. App. 3d 772, 787-88 (1981) (plaintiff's allegations that he

2    had anxiety and could not sleep due to defendant's conduct were not sufficient to constitute

3    severe emotional distress); *Standard Wire & Cable Co. v. AmeriTrust Corp.*, 697 F.Supp.368,

4    372 (C.D. Cal. 1988) (insomnia, anxiety, and irritability not severe under California law).

5           Here, Plaintiff's allegations that she experienced feelings of anxiety which caused her to

6    cry at work on a few occasions, gain weight, and lose interest in getting ready for work do not

7    establish that Plaintiff suffered the requisite level of mental anguish.  *See e.g. Zapponi v. CSK*

8    *Auto, Inc.*, Case No. 02-0536, 2002 U.S. Dist. LEXIS 23382 (N.D. Cal. Dec. 3, 2002) (granting

9    employer summary judgment on plaintiff's intentional infliction of emotional distress claim

10   where the plaintiff was down on herself about her job, experienced weight gain, and wanted to

11   sleep late).

12          Moreover, any emotional distress that Plaintiff was suffering from in 2012 forward is

13   attributable to other factors other than Defendants' alleged conduct.  Plaintiff's grandmother

14   passed away in January of 2012 and her death was admittedly "difficult" on Plaintiff.  (Saucedo

15   Dep. 36-38).  Additionally, two of Plaintiff's nieces were diagnosed with epilepsy and suffer

16   from seizures and even Plaintiff's doctor has acknowledged that Plaintiff has "numerous

17   personal stress issues relating to [her] family."  (Saucedo Dep. 36-38, 187-188, Ex. 7).

18                    **2.    Plaintiff Cannot Establish A "Negligent Infliction of Emotional**
                      **Distress" Claim.**

19          The California Supreme Court has made clear that there is no separate cause of action

20   for the negligent infliction of emotional distress – there is only the tort of negligence:

21          "Unless the defendant has assumed a duty to [the] plaintiff in which the
            emotional condition of the plaintiff is an object, recovery is available only if the

22          emotional distress arises out of the defendant's breach of some other legal duty
            and the emotional distress is proximately caused by that breach of duty. Even

23          then, with rare exceptions, a breach of the duty must threaten physical injury,
            not simply damage to property or financial interests."

24
     *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (Cal. 1993).
25

26          This legal standard does not apply to the present case.  Here, Plaintiff has alleged

27   intentional  employment-related  conduct  in  violation  of  FEHA,  not  negligent  conduct.

28   Accordingly, Plaintiff's separate negligent cause of action must be dismissed.  *See e.g. Lopez v.*

1  *Costco Wholesale Corp.*, Case No. 2009 U.S. Dist. LEXIS 93722, *29-31 (E.D. Cal. Oct. 7,

2  2009) (holding that an employer's supervisory conduct is inherently intentional and that there is

3  no negligence theory available for intentional employment conduct in violation of FEHA).

4  **V.     CONCLUSION**

5        For the foregoing reasons, Defendants respectfully request that their Motion for

6  Summary Judgment be granted and that Plaintiff's Complaint be dismissed in its entirety.

7

8  DATED:  May 13, 2015            Respectfully submitted,

9                                 */s/ Liana R. Hollingsworth*

10                                CHRISTOPHER M. AHEARN
                                  Bar No. 239089
11                                OGLETREE DEAKINS
                                  One Market Plaza, Suite 1300
12                                San Francisco, CA  94105
                                  Telephone:  (415) 536-3411
13                                Facsimile:  (415) 442-4870

14                                ANDREW C. SMITH
                                  (Admitted pro hac vice)
15                                VORYS, SATER, SEYMOUR AND PEASE LLP
                                  52 East Gay Street
16                                Columbus, OH 43215
                                  Telephone:  (614) 464-6400
17                                Facsimile:  (614) 464-6350

18                                LIANA R. HOLLINGSWORTH
                                  (Admitted pro hac vice)
19                                VORYS, SATER, SEYMOUR AND PEASE LLP
                                  200 Public Square
20                                Suite 1400
                                  Cleveland, OH  44114
21                                Telephone:  (216) 479-6100
                                  Facsimile:  (216) 479-6060
22
                                  Attorneys for Defendants
23                                VICTORIA'S SECRET STORES, LLC,
                                  RETAIL STORE OPERATIONS, INC.,
24                                SHAWN THOMPSON, and AMY GERMAIN

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT